1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARK MCLEAN SAUNDERS,

12                                    Plaintiff,

13          vs.

14   V.M. ALMAGER, WARDEN,

15                                    Defendant.

CASE NO. 09-0708 L (WMc)

REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE RE
DENIAL OF PETITION FOR WRIT
OF HABEAS CORPUS

16

## I.

17

## INTRODUCTION

18         Mark McLean Saunders ("Petitioner"), a California inmate proceeding *pro se* and *in forma*

19   *pauperis,* challenges his convictions in San Diego Superior Court Case Nos. SCD179948 and

20   SCD184170 with a Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254.

21   Petitioner is currently serving a state prison term of fifty years to life under the Three Strikes Law,

22   comprised of twenty-five years to life for felony DUI (Case No. SCD 179948), (Lodgment 2 at

23   150), and consecutively twenty-five years to life for failing to appear while on bail (Case No. SCD

24   184170).[1] (Lodgment 2 at 152.) Petitioner seeks relief based on: (1) abuse of discretion by the trial

25   court in failing to dismiss strike allegations; (2) ineffective assistance of trial and appellate

26

27         [1] Two enhancements were applied to Petitioner's conviction resulting in the aggregated fifty-

28   year to life sentence. Each enhancement is briefly explained in Part II.A.1 of this Report and
     Recommendation.

counsel; (3) cruel and unusual punishment under state and federal law concerning both the disproportionality of the sentence and the improper application of the Three Strikes Law, and (4) double jeopardy violations concerning multiple convictions from the same offense and sentencing enhancements.

This Report and Recommendation is submitted to United States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule H.C.2 of the United States District Court for the Southern District of California. After reviewing the Petition, Respondent's Answer and Memorandum of Points and Authorities in support thereof, and all the supporting documents submitted by the parties, the Court recommends the Petition be **DENIED** for the reasons stated below.

## II.

## PROCEDURAL HISTORY

### A. State Court Proceedings

#### 1. Underlying Offenses

On June 29, 2005, after Petitioner waived his right to a jury trial, Judge William H. Kennedy of the Superior Court of San Diego County convicted Petitioner of the following three counts under Case No. SCD 179948: (count 1) possession of methamphetamine; (count 2) driving under the influence of alcohol and/or drugs ("DUI"); and (count 3) being under the influence of methamphetamine. In addition, the court convicted Petitioner of willful failure to appear while on bail under Case No. SCD 184170. While the court stayed the sentences for count 1 and count 2 of Case No. SCD 179948 - two years and ninety days, respectively - the court found two enhancements: (1) elevating to a felony the DUI as a result of a previous conviction under Vehicle Code section 23153(a); and (2) elevating to a felony Case No. SCD 184170 pursuant to an on-bail enhancement under California Penal Code section 12022.1(b).

On November 2, 2005, Petitioner appealed the conviction to the California Court of Appeal, Fourth Appellate District, Division One, contending: (1) the trial court's failure to strike Petitioner's previous convictions was an abuse of discretion; and (2) Petitioner's fifty-years-to-life sentence violates the state and federal prohibitions against cruel and unusual punishment because

it is disproportionate to Petitioner's current offenses. (Lodgment 3.) The California Court of Appeal affirmed the conviction on February 27, 2007. (Lodgment 4.)

On March 28, 2007, Petitioner appealed the conviction to the California Supreme Court, maintaining the same two contentions previously raised with the Court of Appeal. (Lodgment 5.) The petition for review to the California Supreme Court cited only state law and no allegations addressing federal questions were contained therein. The California Supreme Court denied the petition for review on May 9, 2007.

**2. Collateral Review**

On February 29, 2008, Petitioner filed his petition for writ of habeas corpus in the Superior Court of San Diego County, on the following four grounds: (1) ineffective assistance of trial counsel; (2) inappropriate application of the Three Strikes law resulting in an excessive sentence in violation of the Eighth Amendment to the U.S. Constitution; (3) inappropriate application of the Three Strikes law resulting in multiple jeopardy; and (4) ineffective assistance of appellate counsel. (Lodgment 7.) On April 29, 2008, the Superior Court of San Diego County issued a written opinion denying the petition for writ of habeas corpus on substantive grounds.[2] (Lodgment 8.)

On June 5, 2008, Petitioner appealed the denial of petition for writ of habeas corpus to the California Court of Appeal, Fourth District, Division One. (Lodgment 9.) The Court of Appeal denied the petition on July 31, 2008. (Lodgment 10.)

On October 1, 2008, Petitioner appealed the petition to the California Supreme Court. (Lodgment 11.) The California Supreme Court denied the petition on March 25, 2009. (Lodgment 12.)

---

[2] The Superior Court denied the petition on substantive grounds despite noting Petitioner's "ineffective assistance of trial counsel" and "inappropriate application of the Three Strikes law resulting in multiple jeopardy" claims violated the "general rule" that, absent special circumstances, issues raised on collateral review that "could have been, but were not, raised on a timely appeal from a judgment of conviction" are not cognizable on collateral review. (Lodgment 8 at 3, citing In re Clark, 5 Cal. 4th 750, 765 (1993) (quoting In re Dixon, 41 Cal.2d 756, 759 (1953)). Additionally, the Superior Court failed to include Petitioner's Eighth Amendment challenge to the Three Strikes law regarding an "excessive sentence" - which Petitioner could have but failed to raise on direct review - to the list of uncognizable claims on collateral review. In fact, even though Petitioner raised on collateral review the "excessive sentence" claim, the Superior Court failed to mention or address this claim altogether.

**B. Federal Court Proceedings**

On April 8, 2008 – before appealing the denial of his state habeas corpus petition to the California Court of Appeal – Petitioner filed his federal Petition for Writ of Habeas Corpus, asserting six claims: (1) the trial court's failure to strike Petitioner's previous convictions was an abuse of discretion; (2) the fifty-year-to-life sentence constitutes cruel and unusual punishment because it is disproportionate to his current offenses; (3) ineffective assistance of trial counsel; (4) inappropriate application of the three strikes law in violation of the Fifth and Eighth Amendments; (5) violation of double jeopardy in violation of the Fifth Amendment; and (6) ineffective assistance of appellate counsel.

Petitioner conceded claims three to six were unexhausted. As a result, on May 5, 2008, the court issued a Notice Regarding Possible Dismissal of Petition for Failure to Exhaust State Court Remedies. In response, on May 14, 2008, Petitioner exercised one of the options provided in the court's notice and filed a motion to stay and abey his federal petition in order to exhaust his unexhausted claims in state court. On October 20, 2008, United States District Court Judge M. James Lorenz denied Petitioner's motion to stay and abey.

On April 8, 2009, after Petitioner fully exhausted his previously unexhausted claims in state court evidenced by a denial of his petition by the California Supreme Court, Petitioner filed the instant Petition for Writ of Habeas Corpus with this Court, asserting the same six claims he asserted previously, all of which are now exhausted. On September 21, 2009, Respondent filed an Answer with an attached Memorandum of Points and Authorities ("Answer") denying each and every allegation in the petition. Respondent concedes the claims currently before this Court are exhausted and timely. (Answer at 2.) Petitioner did not file a traverse.

### III.

### STATEMENT OF FACTS

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.S. § 2254(e)(1) (Deering

1  2009). Here, the facts are taken from the February 27, 2007 direct appeal opinion of the California

2  Court of Appeal, Fourth Appellate District, Division One. (Lodgment 4.)

3      At around 9:50 p.m. on January 17, 2004, San Diego Police Officer Christopher Poznanski

4  stopped Petitioner in his pickup truck for a defective brake light. Although the weather was cool,

5  Petitioner was sweating, and his speech was rapid. Based on his experience and education, Officer

6  Poznanski believed Petitioner was under the influence of a stimulant. Poznanski called for backup.

7  The backup officer searched Petitioner and found a baggie containing a usable amount of

8  methamphetamine in Petitioner's shoe. Urinalysis later revealed the presence of methamphetamine

9  or amphetamine in Petitioner's system. On April 8, 2004, after Petitioner was released on bail, the

10  court ordered Petitioner to appear in court on May 14, 2004 for a readiness conference. When

11  Petitioner's case was called and recalled later in the morning, Petitioner did not appear, and a

12  bench warrant was issued.

13      From 1973 to 1986, Petitioner received probation five times for a variety of offenses

14  resulting in convictions, including: in 1973, minor in possession of an alcoholic beverage (Cal.

15  Bus. & Prof. Code § 25662); in 1975, possessing an alcoholic beverage in a motor vehicle (former

16  Cal. Veh. Code § 23123.5) and carrying a loaded firearm in a vehicle (Cal. Pen. Code § 12031); in

17  1976, being drunk in public (Cal. Pen. Code § 647(f)); in 1978, reckless driving (Cal. Veh. Code §

18  23103); in 1979, being drunk in public; in 1982, driving under the influence; in 1986, possessing

19  an open alcohol container in a vehicle (Cal. Veh. Code § 23223). Further, in 1986, Petitioner was

20  involved in a motor vehicle collision while under the influence of alcohol. This collision resulted

21  in three fatalities. As a result, in 1987, Petitioner was convicted of three counts of vehicular

22  manslaughter and one count of causing bodily injury while driving under the influence. Petitioner

23  received one strike for each of the three fatalities. These convictions resulted in Petitioner having a

24  total of four prior strikes.

25                    **IV.**

26              **STANDARD OF REVIEW**

27      Title 28, United States Code section 2254 and the Antiterrorism and Effective Death

28  Penalty Act of 1996 (AEDPA), codified at Title 28, United States Code section 2254,

subpart(d)(1), sets forth the following scope of review for federal habeas corpus claims:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. [...]
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(a), (d)(1)-(2).

When determining what constitutes "clearly established federal law" under section 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412) (2000)); Lambert v. Blodgett, 393 F.3d 943, 974 (9th Cir. 2004) (citing Andrade to explain clearly established federal law is the governing legal principle or principles set forth by the U.S. Supreme Court at the time the state court renders its decision). Ninth Circuit law may also be considered for its "persuasive authority in applying Supreme Court law." Lewis v. Mayle, 391 F.3d 989, 995 (9th Cir. 2004) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000), overruled in part on other grounds by Andrade, 538 U.S. 63 (2003)); see also, Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) (noting while circuit law may be persuasive authority, "only the [United States] Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied").

The "contrary to" and "unreasonable application" clauses contained in section 2254(d)(1) have independent meaning. Williams, 529 U.S. at 404-405; Lambert, 393 F.3d at 974; Van Lynn v. Farmon, 347 F.3d 735, 738 (9th Cir. 2003). A state court decision is "contrary to" clearly established federal law as determined by the United States Supreme Court if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result. Williams, 529 U.S. at 405-406, 412; Bell v. Cone, 535 U.S. 685, 694

1 (2002); <u>Andrade</u>, 538 U.S. at 73; <u>Lambert</u>, 393 F.3d at 974; <u>Clark</u>, 331 F.3d at 1067. A state court

2 is not required to even be aware of clearly established applicable Supreme Court cases, so long as

3 "neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>,

4 537 U.S. 3, 8 (2002).

5     A state court decision involves an unreasonable application of Supreme Court law if (1) the

6 state court identifies the correct governing rule, but unreasonably applies the rule to a new set of

7 facts, or (2) "the state court either unreasonably extends a legal principle from our precedent to a

8 new context where it should not apply or unreasonably refuses to extend that principle to a new

9 context where it should apply." <u>Williams</u>, 529 U.S. at 407; <u>Wiggins v. Smith</u>, 539 U.S. 510, 520

10 (2003); <u>Andrade</u>, 538 U.S. at 76; <u>Lambert</u>, 393 F.3d at 974; <u>Clark</u>, 331 F.3d at 1067. For a state

11 court decision to be an unreasonable application of clearly established federal law, the state court

12 decision must be more than simply incorrect or erroneous; instead, the state court's decision must

13 be "objectively unreasonable." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380 (2009) (citing <u>Wiggins</u>, 539

14 U.S. at 520-521); <u>Williams</u>, 529 U.S. at 409; <u>Vasquez</u>, 572 F.3d 1029, 1035 (citing <u>Andrade</u>, 538

15 U.S. at 75; <u>see also</u> <u>Hernandez v. Small</u>, 282 F.3d 1132, 1140 (9th Cir. 2002) (federal habeas

16 courts determine the reasonableness of the state court's decision, not its reasoning). Thus, this

17 Court will not disturb the decisions of the California state courts with respect to Petitioner's claims

18 unless the state courts' resolutions of those claims were "contrary to, or involved an unreasonable

19 application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. §

20 2254(d); <u>see also</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 762 (9th Cir. 2004).

21     Where there is no reasoned decision from the state's highest court, the Court "looks

22 through" to the last reasoned state court decision. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06

23 (1991); <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198 (9th Cir. 2006); <u>Vasquez</u>, 572 F.3d at 1035;

24 <u>Van Lynn</u>, 347 F.3d at 738. However, if the relevant state court decision does not provide an

25 adequate explanation or a discernable basis for its reasoning on a particular claim, the federal court

26 must conduct "an independent review of the record to determine whether the state court's decision

27 was objectively unreasonable." <u>Richter v. Hickman</u>, 578 F.3d 944, 951 (9th Cir. 2009) (quoting

28 <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123, 1127 (9th Cir. 2006)); <u>accord</u> <u>Himes v.</u>

1   Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

2   2000).

3                                                    **V.**

4                                          **DISCUSSION**

5   **A. Trial Court's Failure to Dismiss Prior Strikes Was An Abuse of Discretion**

6           Petitioner claims the state trial court abused its discretion in failing to dismiss any of

7   Petitioner's four prior strike convictions under California Penal Code section 1385, which grants

8   the trial court power and discretion to do so "in the interest of justice." People v. Superior Court

9   (Romero), 13 Cal. 4th 497, 529-530 (Cal. 1996). Petitioner claims the remoteness, minor and non-

10  aggravated nature of his prior strike convictions coupled with the minimal nature of the current

11  offenses, places him outside the "spirit" of the Three Strikes law as defined by the court in People

12  v. Williams, 17 Cal. 4th 148, 163 (Cal. 1998). (Petition at 6.)

13          The trial court must consider a number of factors in determining whether to dismiss prior

14  strike allegations, including the "nature and circumstances" of the current offense, defendant's

15  prior serious and/or violent felony convictions, and particulars of the defendant's "background,

16  character and prospects..." Id. at 162-163. After considering these factors and concluding the

17  defendant may be "deemed outside the spirit of the Three Strikes law," the trial court may dismiss

18  any or all of the defendant's prior strike convictions. Id. at 163.

19          A court's discretion to dismiss prior strikes resulting from felony convictions, however, is

20  "limited"; the court's exercise of discretion "must proceed in strict compliance with [California

21  Penal Code] section 1385(a), and is subject to review for abuse." Romero, 13 Cal. 4th at 530;

22  Williams, 17 Cal. 4th at 158. Under this abuse of discretion standard, the defendant must show the

23  trial court's determination was "arbitrary or irrational." People v. Gimenez, 14 Cal. 3d 68, 72

24  (1975); see People v. Superior Court (Alvarez), 14 Cal. 4th 968, 977-78 (1997) (if the party

25  attacking the sentence fails to show, as his burden requires, the sentencing decision was "irrational

26  or arbitrary," "the trial court is presumed to have acted to achieve legitimate sentencing

27  objectives"); People v. King, 183 Cal. App. 4th 1281, 1323 (2010) (same).

28          Such a review for abuse of discretion under California law, however, is not part of a federal

1  court's collateral review because federal habeas corpus relief "does not lie for errors of state law."

2  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); accord Estelle v. McGuire, 502 U.S. 62, 67 (1991);

3  Richmond v. Lewis, 506 U.S. 40, 51 (1992); Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir.

4  2010); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) ("[Jury] instructions that contain

5  errors of state law may not form the basis for federal habeas relief.") (citing Estelle, supra). "It is

6  not the province of a federal habeas court to reexamine state-court determinations on state-law

7  questions. In conducting habeas review, a federal court is limited to deciding whether a conviction

8  violated the Constitution, laws, or treaties of the United States." Estelle at 67-68; Matylinsky,

9  supra, at 1094 n. 4 (defendant "does not claim that there was a violation of any constitutional right.

10  Therefore, this portion of his claim fails.")

11        Accordingly, this court is bound by the California Court of Appeal's reasoned affirmation

12  of the state trial court's determination, particularly pursuant to Romero and Williams, supra,  not

13  to dismiss Petitioner's prior strike allegations with respect to both Case No. SCD179948 and Case

14  No. SCD184170. As the Court of Appeal noted, the trial court engaged in the necessary analysis

15  under Williams to determine Petitioner represents the kind of person targeted by the Three Strikes

16  law thereby placing the trial court's refusal to dismiss prior strike allegations well within the trial

17  court's discretion under Romero and section 1385. (Lodgment 4 at 6-7.) Among the factors the

18  trial court considered were: Petitioner's recidivist criminal history, Petitioner's repeated failure to

19  comply with probation conditions, and the conduct underlying the present offenses. (Lodgment 4

20  at 5-9.)

21        Ultimately, however, the only issue the Court of Appeal is required to determine is whether

22  the trial court abused its discretion in refusing to dismiss Petitioner's prior strikes. On this issue,

23  the Court of Appeal stated, "While the sentence the trial court imposed is unquestionably severe,

24  we cannot say that the sentence is so irrational or arbitrary that no reasonable court would have

25  imposed it." (Lodgment 4 at 9.)

26        Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

27  / / /

28  / / /

**B. Ineffective Assistance of Trial Counsel**

Petitioner claims he received ineffective assistance of trial counsel in violation of the Sixth Amendment because: (a) counsel visited Petitioner only once in county jail and thus "failed to spend adequate time...to effectively prepare for the defense or develop any reasonable defense strategy"; (b) counsel "failed to follow up" with character witnesses and employment references; (c) counsel "failed to follow up" with the recommendation of a psychiatrist concerning the need for Petitioner to be admitted to a residential drug-treatment program, particularly Delancey Street; (d) counsel advised Plaintiff to waive trial by jury because counsel believed the judge would be more amenable to a drug-treatment program; however, during the bench trial counsel failed to broach the subject of rehabilitation; (e) counsel failed to "bring forth one witness to testify for the defense," particularly to rebut the prosecution's toxicology witness's testimony concerning the bodily effects of methamphetamine; and (f) counsel failed to object to the introduction of victim impact statements regarding the prior fatal DUI offense (Petition at 11-13).

The Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defence [sic]." The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) ("[T]his Court has repeatedly applied [the Strickland] standard to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point"); see Moore v. Czerniak, 574 F.3d 1092, 1100 (9th Cir. 2009) (stating the rule set forth in Strickland is "clearly established federal law" under AEDPA); Sims v. Brown, 425 F.3d 560, 584 (9th Cir. 2005); see also People v. Gamache, 48 Cal. 4th 347, 391 (Cal. 2010) (describing the Strickland standard as a "settled standard" in assessing ineffective assistance of counsel claims in California).

For an ineffective assistance of counsel claim to provide a basis for habeas relief, Petitioner must satisfy both prongs of the two-prong test laid out in Strickland. First, he must show "counsel's performance was deficient." Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Id. In other words, counsel's performance must fall below an "objective standard of reasonableness." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Second, Petitioner must show counsel's deficient performance "prejudiced the defense." Id. This prong requires showing counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. To satisfy this prong, Petitioner need only demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Smith v. Spisak, 130 S. Ct. 676, 685 (2010) (quoting Strickland, 466 U.S. at 694). The prejudice inquiry "must be considered in light of the strength of the [prosecution]'s case." Rhoades v. Henry, 596 F.3d 1170, 1193 (9th Cir. 2010) (quoting Rios v. Rocha, 299 F.3d 796, 808-09 (9th Cir. 2002) (internal quotation marks omitted).

Judicial scrutiny of counsel's performance "must be highly deferential" pursuant to a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, where all significant decisions made by counsel are presumed to have been made in the "exercise of reasonable professional judgment." Id. at 690. In addition, the U.S. Supreme Court recently stated the question under AEDPA is not whether a federal court "believes the state court's determination under the Strickland standard was incorrect" but whether the determination was "unreasonable--a substantially higher threshold." Mirzayance, 129 S. Ct. at 1420 (internal quotation marks omitted). Further, the Supreme Court reiterated that, because the Strickland standard is a "general standard," a state court has "even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. Thus, a habeas petitioner alleging ineffective assistance of counsel must doubly overcome the deference owed to a trial counsel's discretionary decisions and the deference required by the AEDPA.

Petitioner raised the ineffective assistance of trial counsel claim on collateral review, and the California Court of Appeal rejected the claim on the merits on two grounds: (1) "Petitioner [made] no showing that, but for counsel's alleged errors, the outcome of the trial would have been different" and (2) Petitioner "demonstrated no prejudice in trial counsel's alleged errors" (Lodgment 10.)

First, Petitioner is simply mistaken when he claims, "Once the trial began, counsel never

again broached the subject of rehabilitation or residential treatment." At sentencing, Petitioner's trial counsel ended his opening remarks by saying, "...I would ask this court to strike the [prior strikes] and grant probation with a structured drug treatment program..." (RT at 141). Thus, trial counsel's alleged failure to broach the subject of rehabilitation during the bench trial would not have produced – and *did not* produce – a different outcome. As a result, the Court of Appeal's denial of Petitioner's ineffective assistance of trial counsel claim on this ground is not "contrary to" or an "unreasonable application of" Strickland because trial counsel's performance was neither deficient nor prejudicial.

In addition, given the "wide range of reasonable professional assistance" and the high degree of deference owed to trial counsel in exercising professional judgment, the Court of Appeal's denial of Petitioner's claim did not contravene the dictates of Strickland. Petitioner failed to establish trial counsel's performance fell below an "objective standard of reasonableness" and that the outcome of the trial would have been different had trial counsel visited him more often in county jail; followed up with character witnesses and/or employment references; followed up with the psychiatrist concerning the recommendation for Petitioner to be admitted to a drug rehabilitation program as an alternative sentencing option; opted for a trial by jury; rebutted the prosecution's toxicology witness's testimony, and/or objected to the introduction of testimony by victims of a prior offense at the time of sentencing.

As to each alleged instance of ineffective assistance of trial counsel raised by Petitioner, the California Court of Appeal's denial is not "contrary to" or the result of an "unreasonable application of" established Supreme Court precedent. § 2254(d). Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

**C. Cruel and Unusual Punishment**

**1. Inappropriate Application of Three Strikes Law**

Petitioner claims his Three Strikes sentence of 50-years-to-life violates his constitutional right against cruel and unusual punishment under the Eighth Amendment to the United States Constitution because "it was not the intent of the 3 Strikes law to cull 3 strikes from one act where there was no criminal intent," particularly from an act "that happened 20 years ago." (Petition at

15.) Petitioner contends the trial court inappropriately used three prior strikes, which arose from a "single, unintentional act," to "increase the sentence for the Failure to Appear [Case No. SCD 184170] to a sentence of 25 years to life, the application of which is to run consecutively to the 25 years to life Petitioner received for the Driving Under the Influence conviction [Case No. SCD179948]. (Petition at 16-17.) Petitioner concludes, "[I]t was not the intent of the three strikes legislation, and therefore an error, to apply strikes to a Failure to Appear conviction." (Petition at 17.)

The Eighth Amendment to the United States Constitution mandates "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment prohibition against cruel and unusual punishment "not only [prohibits] barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983). More precisely, the Eighth Amendment contains a "narrow proportionality principle," but "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are '*grossly* disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment) (quoting Solem, 463 U.S. at 288) (emphasis added); Rummel v. Estelle, 445 U.S. 263, 271 (1980) (the Eighth Amendment prohibits "grossly disproportionate" sentences); United States v. Meiners, 485 F.3d 1211, 1212-13 (9th Cir. 2007) (per curiam) ("The Eighth Amendment forbids as cruel and unusual punishment prison terms that are grossly disproportionate") (internal quotation marks omitted); United States v. Harris, 154 F.3d 1082, 1084 (9th Cir. 1998); see also Coker v. Georgia, 433 U.S. 584, 592 (1977) (death sentence for rape conviction is "grossly disproportionate" to the crime and thus "forbidden by the Eighth Amendment as cruel and unusual punishment").

The U.S. Supreme Court, in reviewing its Eighth Amendment jurisprudence, has plainly stated with respect to the Cruel and Unusual Punishments Clause "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." Andrade, 538 U.S. at 72; Gonzalez v. Duncan, 551 F.3d 825, 879 (9th Cir. 2008) ("the only relevant clearly established law amenable to the 'contrary

1   to' or 'unreasonable application of' framework is the gross disproportionality principle...")

2   (internal quotation marks omitted); <u>Ewing v. California</u>, 538 U.S. 11, 28-31 (2003) (plurality

3   opinion) (applying the gross disproportionality principle); <u>Ramirez v. Castro</u>, 355 F.3d 755, 770-

4   73 (9th Cir. 2004) (same).

5        The state court's determination as to which, if any, of Petitioner's prior offenses constitute

6   strikes and which, if any, prior strikes will be used to enhance Petitioner's sentence under

7   California's Three Strikes Law is not "contrary to" nor an "unreasonable application" of "clearly

8   established federal law" because there is no clearly established federal law of the kind required by

9   the AEDPA relating to Petitioner's instant claim. As previously noted, the only relevant, clearly

10  established federal law related to the Cruel and Unusual Punishment Clause under the AEDPA is

11  the gross disproportionality principle. <u>Andrade</u>, 538 U.S. at 72; <u>Gonzalez</u>, 551 F.3d at 879.

12  Besides the gross disproportionality principle, therefore, no other governing legal principle has

13  been gleaned from or clearly established under the Eight Amendment concerning cruel and

14  unusual punishment, particularly including any principle related to a state legislature's intent to

15  "cull three strikes from one act where there was no criminal intent" and using the strikes to

16  enhance a failure to appear conviction under a Three Strikes sentencing regime. As such,

17  Petitioner has not met his burden under § 2254(d).

18        Additionally, it is a matter of California law and within the jurisdiction and discretion of

19  the California state courts to determine which, if any, prior offenses constitute strikes and which, if

20  any, prior strikes will be used to enhance a particular sentence under California's Three Strikes

21  Law. As previously mentioned, such a determination under California law is no part of a federal

22  court's collateral review because federal habeas corpus relief "does not lie for errors of state law."

23  <u>Estelle</u>, 502 U.S. at 67 (1991) (quoting <u>Jeffers</u>, 497 U.S. at 780 (1990)). "It is not the province of a

24  federal habeas court to reexamine state-court determinations on state-law questions. In conducting

25  habeas review, a federal court is limited to deciding whether a conviction violated the

26  Constitution, laws, or treaties of the United States." <u>Id</u>. at 67-68; <u>Pulley v. Harris</u>, 465 U.S. 37, 41

27  (1984). Accordingly, in the alternative, Petitioner also has failed to state a cognizable federal

28  claim.

Finally, "for purposes of a Three Strikes sentence, 'the fact that [the defendant's] prior convictions were adjudicated in a single proceeding does not mean that they constitute one prior conviction; two strikes can arise from one case.'" Ramirez v. Castro, 365 F.3d 755, 758 n. 3 (9th Cir. 2004) (quoting People v. Superior Court (Arevalos), 41 Cal. App. 4th 908, 915 (Cal. Ct. App. 1996); accord People v. Brady, 34 Cal. App. 4th 65, 70-71 (Cal. Ct. App. 1995). As a result, Petitioner's claim also lacks merit.

Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

**2. 50 Years to Life Imprisonment is Disproportionate to Current Offenses**

Petitioner claims his 50-years-to-life sentence violates federal prohibitions against cruel and unusual punishment because it is "disproportionate to the current offenses." [3] (Petition at 8.) Petitioner supports his claim by stating: "Solem found 8th Amendment prohibited a recidivist sentence of life in prison for a seventh non-violent felony"; "the sentence punished harsher than the punishment of a more serious crime"; "the sentence imposed is substantially greater for 2 low level offenses than for that of far more serious/violent felonies such as 15 yrs to Life for 2nd Degree Murder and Manslaughter witch [sic] carries local jail time to 11 years"; and "Appellant was 50 yrs old at time of sentencing. Sentence is 50 yrs to life and is disproportionate to the gravity of the crimes and shocks the conscience and offends notions of human dignity." (Petition at 8.)

As previously noted, the Eighth Amendment contains a narrow proportionality principle[4]

---

[3] Petitioner raised this particular Eighth Amendment issue on direct review, and the state appellate court adjudicated the claim on the merits. Accordingly, this Court will look through the Court of Appeal decision on direct review in order to determine whether that particular claim is "contrary to" or an "unreasonable application of" clearly established federal law under AEDPA.

[4] See United States v. Bland, 961 F.2d 123, 128-29 (9th Cir. 1992) (explaining because "[n]o majority opinion emerged in Harmelin on the question of proportionality...the holding in Harmelin should be viewed as 'that position taken by those Members who concurred in the judgments on the narrowest grounds...'" (quoting Marks v. United States, 430 U.S. 188, 193 (1977)). Since seven members of the Harmelin Court agreed the Eighth Amendment contains a gross disproportionality principle, Gonzalez, 551 F.3d at 881, and Justice Kennedy's concurrence represented the narrowest view of the seven-person majority, Harmelin, 501 U.S. at 997, the court concluded "Justice Kennedy's view that the Eighth Amendment forbids only extreme sentences that are 'grossly disproportionate' to the crime is the 'rule' of Harmelin." Bland, 961 F.2d at 129; Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (announcing although the Harmelin Court "did not produce a majority opinion on the issue [of proportionality]...we have held that after Harmelin, 'only extreme sentences

that applies to sentences for a term of years, Harmelin, 551 U.S. at 996-97, in particular a gross

disproportionality principle. Id. at 1001. While the gross disproportionality principle may be

clearly established with respect to AEDPA,[5] the "precise contours" of the principle are "unclear,"

Andrade, 538 U.S. at 73, and "applicable only in the 'exceedingly rare' and 'extreme' case." Id. at

72-73 (quoting Harmelin, 501 U.S. at 998, 1001 (Kennedy, J., concurring in part and concurring in

judgment)); see Solem, 463 U.S. at 289-90 ("Outside the context of capital punishment, successful

challenges to the proportionality of particular sentences will be exceedingly rare") (internal

quotation marks omitted); accord Rummel, 445 U.S. at 272; Hutto v. Davis, 454 U.S. 370, 374

(1982) (per curiam).

The U.S. Supreme Court has announced a three-factored analysis to guide review of an

alleged grossly disproportional sentence for a term of years under the Eighth Amendment: (1) "the

gravity of the offense and the harshness of the penalty"; (2) "it may be helpful to compare the

sentences imposed on other criminals in the same jurisdiction"; and (3) "courts may find it useful

to compare the sentences imposed for commission of the same crime in other jurisdictions."

Solem, 463 U.S. at 290-91. Justice Kennedy, however, accurately noted the Solem three-factor

analysis is not a "mandate" or a "rigid three-part test." Harmelin, 501 U.S. at 1004-05 (Kennedy,

J., concurring in part and concurring in judgment). Rather, Justice Kennedy thought the Court

should conduct an initial analysis of Solem's first factor - the crime committed and the sentence

imposed - only to "proceed with intrajurisdictional and interjurisdictional analyses 'in the rare

case[s]' where the initial examination leads to 'an inference of gross disproportionality.'"

Gonzalez, 551 F.3d at 881 (quoting Harmelin, 501 U.S. at 1005-06) (Kennedy, J., concurring in

part and concurring in judgment).

---

that are grossly disproportionate to the crime' violate the Eighth Amendment" (citing Bland, 961 F.2d at 129); accord United States v. Johnson, 944 F.2d 396, 408-09 (8th Cir. 1991); United States v. Hopper, 941 F.2d 419, 422 (6th Cir. 1991).

[5] While seven members of the Court in Harmelin, supra, agreed the Eighth Amendment contains a gross disproportionality principle they disagreed with respect to the factors of which the principle is comprised. In addition, in Ewing v. California, 538 U.S. 11 (2003), the view shared by Justices Scalia and Thomas - that the Eighth Amendment contains no proportionality principle - was "clearly rejected" by the plurality and the four dissenters. Gonzalez, 551 F.3d at 881 n. 7. Therefore, it suffices to say, "[a]lthough the [gross disproportionality] principle may be 'clearly established,' the details are not." Id. at 882.

In addition, Justice Kennedy identified four "common principles" of proportionality review: (1) the primacy of the legislature in determining appropriate punishment; (2) the variety of legitimate penological schemes; (3) the inevitably divergent theories of sentencing in our system of federalism; and (4) the use of objective factors to guide proportionality review. Harmelin, 501 U.S. at 999-1001 (Kennedy, J., concurring in part and concurring in judgment). These principles have been followed in later decisions. Rummel, 445 U.S. at 278 (describing the Texas recidivist statute under which the Court upheld defendant's life sentence as "nothing more than a societal decision that when such a person commits yet another felony, he should be subjected to the admittedly serious penalty of incarceration for life, subject only to the State's judgment as to whether to grant him parole.") (footnote omitted); Andrade, 538 U.S. at 76 (state legislatures have "broad discretion to fashion a sentence that fits within the scope of the proportionality principle").

In sum, the analytical approach and principles contained in Justice Kennedy's concurrence in Harmelin have emerged as the guiding rule, particularly in the Ninth Circuit, with respect to the application of the Eighth Amendment. Bland, 961 F.2d at 129;  Cacoperdo, 37 F.3d at 507; Ramirez, 365 F.3d at 768 (holding if the threshold examination of whether the petitioner's "extreme sentence is justified by the gravity of his most recent offense and criminal history" gives rise to an inference of gross disproportionality, the court must then proceed to intrajurisdictional and interjurisdictional analyses); accord United States v. Meiners, 485 F.3d 1211, 1213 (9th Cir. 2007); see also Ewing, 538 U.S. at 23-24 ("The proportionality principles in our cases distilled in Justice Kennedy's concurrence guide our application of the Eighth Amendment in the new context that we are called upon to consider").

On direct review, the Court of Appeal determined Petitioner's sentence was not disproportionate to his crimes and therefore was not cruel and unusual punishment. (Lodgment 4 at 9-13.) The Court of Appeal reached this decision, however, largely on the basis of an analysis of cruel and unusual punishment under California law, not federal law as petitions for writ of habeas corpus require. Even though a state court is not required to even be aware of clearly established federal law so long as "neither the reasoning nor the result of the state-court decision contradicts them," Early, 537 U.S. at 8, the Court of Appeal made passing reference to the clearly established

1   federal law under the Eighth Amendment. The reference consisted of the following:

2     In light of the holdings in *Harmelin v. Michigan* (1991) 501 U.S. 957, *Rummell v.*
  *Estelle* (1980) 445 U.S. 263, 284-285, and the recent United States Supreme Court
3     companion cases of *Ewing v. California* (2003) 538 U.S. 11 and *Lockyer v.*
  *Andrade* (2003) 538 U.S. 63, in which the courts held that lengthy indeterminate
4     life sentences imposed under California's Three Strikes law for recidivist criminals
  did not violate the Eighth Amendment, any reliance in this case upon the federal
5     prohibition against cruel and unusual punishment would similarly be unsuccessful.

6   (Lodgment 4 at 12.) Clearly, the Court of Appeal's reference to the series of U.S. Supreme Court

7   cases that fashioned the clearly established federal law under the Cruel and Unusual Punishments

8   Clause contains no analysis of federal law. Nevertheless, the Court of Appeal's reasoning and

9   result are neither contrary to nor unreasonable applications of the gross disproportionality

10  principle as articulated by Justice Kennedy in <u>Harmelin</u>.

11    The Court of Appeal's analysis centered around two California Supreme Court cases, <u>In re</u>

12  <u>Lynch</u>, 8 Cal.3d 410 (Cal. 1972) and <u>People v. Dillon</u>, 34 Cal.3d 441 (1983), in which the court

13  engaged in an analysis sufficiently analogous to the framework of the gross disproportionality

14  principle as articulated by Justice Kennedy in <u>Harmelin</u>. First, the Court of Appeal articulated the

15  rule under <u>Lynch</u>, stating:

16    *Lynch* applied a three-pronged approach to determine whether a particular
  punishment is disproportionate to the offense for which it is imposed. [Citing
17    <u>Lynch</u>, 8 Cal. 3d at 429-439.] Under the first prong, the California Supreme Court
  examined the "nature of the offense and/or offender, with particular regard to the
18    degree of danger both present to society." [Citing <u>Id</u>. at 425.] Second, the court
  compared the challenged punishment with that prescribed for more serious crimes
19    in the same jurisdiction. [Citing <u>Id</u>. at 426.] Finally, the challenged punishment was
  compared with punishments for the same offense in other jurisdictions. [Citing <u>Id</u>.
20    at 427.]

21  (Lodgment 4 at 9-10, footnote 1.) The Court of Appeal, then, explained the analysis

22  employed in <u>Dillon</u>, stating:

23    In so deciding [that under the facts of that case, the life imprisonment of a 17-year-
  old defendant for first degree murder based on a felony murder theory violated
24    California's constitutional prohibition against cruel and unusual punishment], the
  court refined the first prong of *Lynch*, stating that trial courts and reviewing courts
25    should examine 'not only the offense in the abstract...but also the facts of the crime
  in question.' [Citation omitted.] Courts should consider 'the totality of the
26    circumstances' including motive, the way the crime was committed, the extent of
  the defendant's involvement, and the consequences of the defendant's acts.
27    [Citation omitted.] With respect to the nature of the offender, a court should ask
  whether 'the punishment is grossly disproportionate to the defendant's individual
28    culpability as shown by such factors as his age, prior criminality, personal
  characteristics, and state of mind.' [Citation omitted.]

(Lodgment 4 at p. 10, footnote 2.)

The Court of Appeal made four additional points about the law governing its analysis. First, the court stated, "Ultimately, however, the test whether a specific punishment is cruel and unusual is whether it is out of all proportion to the offense...so as to shock the conscience and offend fundamental notions of human dignity." (Lodgment 4 at 10-11.) (internal quotation marks and citations omitted.)

Second, the court noted the analysis developed in <u>Lynch</u> and <u>Dillon</u> "merely provides guidelines for determining whether a given punishment is cruel and unusual. The importance of each criteria depends on the facts of the specific case." (Lodgment 4 at p. 11.)

Third, the court stated:

Although determinations whether a punishment is cruel and unusual may be made based on the first *Lynch* factor alone, i.e., the nature of the offense and/or offender [citations omitted], the defendant has the burden of establishing that his punishment is greater than that imposed for more serious offenses in California, and that similar offenses in other states do not carry punishments as severe.

(Lodgment 4 at p. 11.)

Finally, the court concluded its statement of the law by stating, "Successful challenges to proportionality are an 'exquisite rarity.'" (Lodgment 4 at p. 11) (citing <u>People v. Weddle</u>, 1 Cal. App. 4th 1190, 1198-1200 (1991)).

The legal framework under which the Court of Appeal conducted its analysis is similar to the clearly established federal standard concerning cruel and unusual punishment for sentences for a term of years. First, the second and third prongs of <u>Lynch</u> are precisely the same intrajurisdictional and interjurisdictional factors contained in the clearly established federal standard articulated by Justice Kennedy in <u>Harmelin</u>. Second, several factors used in <u>Dillon</u> to refine the first prong of <u>Lynch</u>, particularly prior criminality, have been used repeatedly by federal courts to determine whether there exists an "inference of gross disproportionality". See <u>Rummel</u>, 445 U.S. at 266 (upholding life sentence with the possibility of parole for obtaining $120.75 by false pretenses because of defendant's prior felony convictions involving fraud); <u>Ewing</u>, 538 U.S. at 29, 30 (factoring in defendant's "long history of felony recidivism" in analyzing the crime

committed and the sentence imposed and upholding defendant's 25-years-to-life sentence because

"offenders who have committed serious or violent felonies and who continue to commit felonies

must be incapacitated") (opinion of O'Connor, J.) (plurality)[6]; Andrade, 538 U.S. at 66-67, 77

(upholding 25-years-to-life sentence for stealing $153.54 worth of videotapes because of prior

convictions involving theft, burglary and transport of controlled substances); Nunes v. Ramirez-

Palmer, 485 F.3d 432, 440 (9th Cir. 2007) (denying habeas relief and upholding 25-years-to-life

sentence for shoplifting less than $115 worth of tools because defendant had an "extensive felony

record"); Taylor v. Lewis, 460 F.3d 1093, 1101 (9th Cir. 2006) (upholding 25-year-to-life sentence

for possessing 0.036 grams of cocaine, in part, because of defendant's "history of recidivism");

Rios v. Garcia, 390 F.3d 1082, 1083 (9th Cir. 2004) (upholding 25-years-to-life sentence for

stealing $79.98 worth of watches from K-Mart following prior robbery convictions); cf. Solem,

463 U.S. at 296-97 (finding defendant's life sentence grossly disproportionate to the triggering

offense of uttering a no account check for $100, but noting defendant's crime was "one of the most

passive felonies a person could commit," involving neither violence nor threat of violence to any

person, and defendant's prior felonies were relatively minor)[7]; Ramirez, 365 F.3d at 768

(defendant's strikes were "nonviolent in nature").

On the other hand, the legal framework under which the Court of Appeal conducted its

analysis also differs from clearly established federal law. In particular, the first prong of Lynch is

different from the initial examination dictated by Justice Kennedy in Harmelin: the former being

the "nature of the offense and/or offender, with particular regard to the degree of danger both

present to society" and the latter being an initial examination of the "crime committed and the

sentence imposed" to determine whether the examination leads to an "inference of gross

disproportionality." This difference, however, is slight. Given the ways in which federal courts

have applied Justice Kennedy's test, particularly including a strong consideration of the

---

[6] Justice O'Connor's opinion, joined by the Chief Justice and Justice Kennedy, represents the narrowest basis for the Court's decision, and thus under Marks, supra, consists of the case's holding.

[7] The phrase "uttering a no account check" indicates a method by which a person commits fraud with a check, draft on a bank or depository for payment of money. The phrase was used here because the same phrase was used by the Solem Court in its decision.

1   defendant's prior criminal history and the nature of the triggering offense, the result of an analysis

2   under either test would not be substantially different.

3          Here, the Court of Appeal's repeated reference to Petitioner's lengthy criminal history and

4   recidivist behavior involving driving under the influence of alcohol and drugs - including causing

5   three deaths while driving under the influence - as well as Petitioner's repeated failure to comply

6   with the terms of his probation, resulted in a determination that was not contrary to, nor an

7   unreasonable application of, clearly established federal law.

8          Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

9   **D. Double Jeopardy Violations**

10         **1. Inappropriate Application of the Three Strikes Law**

11         As a companion claim to the cruel and unusual punishment claim addressed in Section

12  V.C.1, *supra*,[8] Petitioner contends his 50-years-to-life sentence violates the Double Jeopardy

13  Clause of the Fifth Amendment because the sentence "exceeds the maximum sentence the

14  legislature intended" and "it was beyond the legislative intent, when it enacted the three strikes

15  law, to cull more than one strike from a single unintentional act."[9] (Petition at 16.) Specifically,

16  Petitioner alleges "it was not the intent of the three strikes legislation, and therefore an error, to

17  apply strikes to a Failure to Appear conviction. The error was compounded by running the [Failure

18  to Appear] sentence consecutive to the DUI sentence." (Petition at 16.)

19         Respondent contends Petitioner's instant double jeopardy claim should be dismissed for

20  two reasons. First, the claim "has been procedurally defaulted, as it was rejected by the California

21  Court of Appeal under California's untimeliness and successive petition rules." (Answer at 12.)

22  Second, as a state law sentencing issue, the claim is not cognizable under federal habeas review

23  absent a showing of fundamental unfairness, which Petitioner has failed to show. (Answer at 12.)

24  Petitioner did not raise the issue of procedural default in the Petition and did not file a Traverse.

25  _____

26         [8] Petitioner combines his cruel and unusual punishment claim and the instant double jeopardy claim under the grounds of "Inappropriate Application of Three Strikes Law" in his Petition. (Petition at p. 16-17.) As such, Petitioner uses the same arguments to allege each claim.

27

28         [9] Petitioner is referencing the court's use of the previously mentioned four prior strike convictions, which Petitioner received as a result of pleading guilty to three counts of vehicular manslaughter in 1986 after his vehicle collided with another vehicle killing three and severely injuring a fourth. The court used these strikes to enhance the punishments for Petitioner's current offenses.

*a. Procedural Default*

The U.S. Supreme Court has indicated issues regarding a state procedural bar should be addressed first: "We do not mean to suggest that the [state] procedural bar issue must invariably be resolved first; only that it ordinarily should be. It is wasteful of both our resources and that of the litigants to remand to the district court a case in which that court improperly found a procedural bar, if the ultimate dismissal of the petition is a foregone conclusion." Lambrix v. Singletary, 520 U.S. 518, 525 (1997). Accordingly, this statement by the Supreme Court requires lower federal courts ordinarily to first resolve procedural default claims made by the state courts.

The procedural default doctrine refers to a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." Dretke v. Haley, 541 U.S. 386, 392 (2004) (quoting McClesky v. Zant, 499 U.S. 467, 489 (1991)). The U.S. Supreme Court has described the procedural default doctrine as a doctrine rooted in the general principle that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." Dretke, 541 U.S. at 392 (citing Wainwright v. Sykes, 433 U.S. 72, 81 (1977)). Thus, when a state court rejects a federal claim based upon a violation of a state procedural rule which is (1) "adequate" to support the judgment and (2) "independent" of federal law, a habeas petitioner has procedurally defaulted his claim. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The Ninth Circuit recognizes two types of procedural bars: express and implied. The court contrasts the two types of procedural bars in the following manner:

> An express procedural bar occurs when the petitioner has presented his claim to the state courts and the state courts have relied on a state procedural rule to deny or dismiss the claim. An implied procedural bar, on the other hand, occurs when the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so. [Citing Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).]

Robinson v. Schriro, 595 F.3d 1086, 1100 (9th Cir. 2010). Here, Petitioner failed to raise the instant double jeopardy claim, i.e. inappropriate application of the Three Strikes law, with the state court on direct review. Subsequently, however, Petitioner raised the claim on collateral review, and the Court of Appeal denied the claim pursuant to a state procedural rule. Thus, Petitioner's

1  claim was denied pursuant to an implied procedural bar.

2      A state procedural rule is "adequate" if it is "clear, consistently applied, and well-

3  established" at the time of the default. Scott v. Schriro, 567 F.3d 573, 580 (9th Cir. 2009) (internal

4  quotation marks and citations omitted); Calderon v. United States District Court, 96 F.3d 1126,

5  1129 (9th Cir. 1996). A state procedural rule is "independent" if it is not "interwoven" with federal

6  law. LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001). "In the context of federal habeas

7  proceedings, the independent and adequate state ground doctrine is designed to 'ensur[e] that the

8  States' interest in correcting their own mistakes is respected in all federal habeas cases.'" Cone v.

9  Bell, __ U.S. __, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman, 501 U.S. at 729).

10      Respondent has the initial burden of pleading as an affirmative defense the default

11  constitutes an adequate and independent ground for denying habeas relief. Schriro, 567 F.3d at

12  580. If Respondent makes a satisfactory showing, the burden then shifts to Petitioner to challenge

13  the adequacy or independence of the procedural bar, which he can do by showing it has been

14  inconsistently applied. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). If Petitioner makes

15  such a showing, then the ultimate burden of proof falls on Respondent. Id. If the Court finds the

16  procedural rule is adequate and independent so as to support a procedural default, federal habeas

17  review of the claim is barred unless Petitioner "can demonstrate cause for the procedural default

18  and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

19  to consider all claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at

20  750; see also Engle v. Isaac, 456 U.S. 107, 129 (1982) ("[W]hen a procedural default bars state

21  litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a

22  showing of cause and actual prejudice"); accord Dretke, 541 U.S. at 393 (citing Wainwright, 433

23  U.S. at 87).

24      Respondent alleges Petitioner's instant double jeopardy claim "has been procedurally

25  defaulted, as it was rejected by the California Court of Appeal under California's untimeliness and

26  successive petition rules." (Answer at 12.)  Here, Respondent is referring to a statement in the

27

28

1   Court of Appeal's decision concerning Petitioner's claims two and three on collateral review.[10]

2   The Court of Appeal stated:

3        Having considered petitioner's various challenges to his sentence on direct appeal,
         we conclude that issues two and three in this petition are a *repetitive, piecemeal*

4        *attack on the same sentence*. [Citing In re Clark, 5 Cal. 4th 750, 765, 767-68
         (1993); In re Harris, 5 Cal. 4th 813, 828-29 (1993).] *To the extent petitioner raises*

5        *new and distinct claims here, we deny them because habeas corpus does not serve*
         *as a substitute for an appeal, or a second attempt at appeal*. [Citing In re Harris, 5

6        Cal. 4th at 829.] (Emphasis added.)

7   (Lodgment 10 at 2-3.) The citations to In re Harris, 5 Cal. 4th 813 (Cal. 1993), by the California

8   Court of Appeal are clear invocations of California's bar on second attempts at appeal.[11] The In re

9   Harris court continues:

10       Proper appellate procedure thus demands that, absent strong justification, issues
         that could be raised on appeal must initially be so presented, and not on habeas

11       corpus in the first instance. Accordingly, an unjustified failure to present an issue
         on appeal will generally preclude its consideration in a postconviction petition for a

12       writ of habeas corpus. [Citation omitted.] "[H]abeas corpus cannot serve as a
         substitute for an appeal, and, in the absence of special circumstances constituting an

13       excuse for failure to employ that remedy, the writ will not lie where the claimed
         errors *could have been, but were not*, raised upon a timely appeal from a

14       judgment..." [Citing In re Dixon, 41 Cal. 3d at 759.] (Emphasis in original.)

15  In re Harris, 5 Cal. 4th at 829.

16       Further, when a petitioner fails to properly raise his federal constitutional claims in state

17  court, "he deprives the State of an opportunity to address those claims in the first instance and

18  frustrates the State's ability to honor his constitutional rights." Cone, __ U.S. __, 129 S. Ct. at

19  1780 (internal quotation marks and citations omitted). Thus, the U.S. Supreme Court has held

20  "when a petitioner fails to raise his federal claims in compliance with relevant state procedural

21  rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and

22  adequate state ground for denying federal review." Id. Accordingly, this Court will undertake a

23  determination of whether the procedural bar represented by In re Harris is adequate and

24  independent to support a finding of procedural default in this Court.

25  _____

26       [10] The claims, in pertinent part, were articulated by the Court of Appeal in the following
    manner: "(2) petitioner's Three Strikes sentence is...not what the legislature intended, thus violating
    the Fifth...Amendment; (3) petitioner's Three Strikes sentence violates double jeopardy". (Lodgment

27  10 at 2.)

28       [11] It should be noted In re Clark, 5 Cal.4th 750 (Cal. 1993), a companion case to In re Harris,
    is often cited as representing the state procedural rule of untimely and/or successive petitions for writ
    of habeas corpus.

1          i. *In re Harris* Constitutes an Adequate Procedural Bar

2          "A state procedural rule constitutes an adequate bar to federal court [habeas] review if it

3   was 'firmly established and regularly followed' at the time it was applied by the state court."

4   Poland v. Stewart, 169 F.3d 573, 585 (9th Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 424

5   (1991)); Bargas v. Burns, 179 F.3d 1207, 1211 (9th Cir. 1999).

6          With respect to Petitioner's instant double jeopardy claim, the record supports a finding

7   that the California Court of Appeal has correctly followed the state procedural rule dictated in In

8   re Harris. The rule that petitions for writ of habeas corpus do not serve as a substitute for appeal,

9   or a second attempt at appeal is firmly established and regularly followed in California. The

10  general rule in California is "[h]abeas corpus will not serve as a second appeal." In re Harris, 5

11  Cal. 4th at 825 (internal quotation marks omitted) (citing In re Foss, 10 Cal. 3d 910, 930 (1974));

12  In re Terry, 4 Cal. 3d 911, 927 (1971)). In re Harris continues: "[H]abeas corpus will not lie

13  ordinarily as a substitute for an appeal...nor as a second appeal. [Citation omitted.] This...rule is

14  now *firmly established and often repeated...*" In re Harris, 5 Cal. 4th at 826 (citing In re Foss,

15  supra, 10 Cal.3d at 930; In re Terry, supra, 4 Cal.3d at 927; In re Waltreus, 62 Cal.2d 218, 225

16  (1965); In re Spears, 157 Cal. App .3d 1203, 1208 (1984); and In re Wagner 119 Cal. App. 3d 90,

17  102 (1981)) (emphasis added.)

18         Petitioner had the opportunity to bring the instant double jeopardy claim on direct review,

19  but he failed to do so. In addition, Petitioner had an opportunity to explain and justify his failure to

20  present the claim, but he did not do so. Finally, Petitioner could have explained in a Traverse why

21  he failed to present the instant claim on direct review, thereby providing some sound reason to

22  excuse his procedural default. As mentioned previously, however, Petitioner did not file a Traverse

23  to Respondent's Answer.

24         The Ninth Circuit has "never presumed the adequacy of a state procedural rule, but rather

25  [has] examined whether the law has in fact been regularly and consistently applied," Bennett v.

26  Mueller, 322 F.3d 573, 585 (9th Cir. 2003). Accordingly, the Court finds Petitioner has not

27  satisfied his burden of "asserting specific factual allegation[s] that demonstrate the inadequacy" of

28  the state procedural rule on the grounds of substitute or second attempts at appeal as described by

In re Harris. See Id. at 586. As a result, the burden does not shift back to Respondent.

For the reasons set forth above, the Court finds Respondent has successfully demonstrated the Court of Appeal followed a procedural rule that has been regularly and consistently applied in habeas actions. Accordingly, the Court finds the state procedural rule applied by the California Court of Appeal on collateral review is adequate to support the judgment.

### ii. *In re Harris* Constitutes an Independent Procedural Bar

In re Robbins, 18 Cal. 4th 770 (Cal. 1998), prospectively established the "independence" of state procedural rules from federal law. See Park v. California, 202 F.3d 1146, 1153 (9th Cir. 2000). As a result, a California court invoking the In re Harris bar no longer involves federal law and is therefore "independent." See Id. at 1152 (suggesting the California Supreme Court adopted the Robbins position and now declines to consider federal law when deciding procedurally defaulted claims). Accordingly, the Court finds the state procedural rule applied here is independent to support the judgment. Thus, a state procedural bar exists. The Court must now determine whether Petitioner has shown cause and prejudice, or a fundamental miscarriage of justice, which would permit the Court to reach the merits of the claim.

### b. Establishment of Cause and Prejudice, or the Existence of a Fundamental Miscarriage of Justice to Excuse the Procedural Default

Although Petitioner has procedurally defaulted his claim, he may escape the consequences of the default by showing either (1) cause and actual prejudice, or (2) a fundamental miscarriage of justice. Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

### i. Cause and Prejudice

In procedural default cases, the cause prong can be satisfied if Petitioner demonstrates some "objective factor" prevented him from raising his claims in state court. See McCleskey v. Zant, 499 U.S. 467, 493 (1991); see also Murray v. Carrier, 477 U.S. 478, 488 (1986) (objective factors that constitute cause include interference by state officials and constitutionally ineffective assistance of counsel).

Here, Petitioner has failed to demonstrate some objective factor impeded his ability to raise the instant double jeopardy claim in state court; thus, he has failed to demonstrate cause. Petitioner

09-0708 L (WMc)

failed to demonstrate cause for the same reasons he failed to satisfy his burden to demonstrate inadequacy of the state procedural rule. Again, Petitioner had the opportunity to bring the instant double jeopardy claim on direct review, but he failed to do so. In addition, Petitioner had two subsequent opportunities - state collateral review and a Traverse in this Court - to explain and justify his failure to present the instant claim on direct review, but he failed to provide any explanation or justification on collateral review. Further, he did not file a Traverse.

As a result of Petitioner's failure to show cause, the Court need not reach the question of whether Petitioner has shown prejudice because in order to excuse the procedural default, Petitioner must show both cause and prejudice. Petitioner, however, may excuse the procedural default if he establishes the consequences of the procedural default, particularly the absence of federal review of the instant double jeopardy claim, result in a fundamental miscarriage of justice.

## ii. Fundamental Miscarriage of Justice

The U.S. Supreme Court has "explicitly tied the miscarriage of justice exception to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995); Carrier, 477 U.S. at 496 (a federal habeas court may grant the writ where a constitutional violation "probably resulted in the conviction of one who is actually innocent"); Kuhlmann v. Wilson, 477 U.S. 436, 452 (1986) ("a prisoner retains a powerful and legitimate interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated.") In Schlup, the Court defined the standard of proof required to properly allege the fundamental miscarriage of justice exception instructing the petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Johnson v. Knowles,, 541 F.3d 933, 935-36 (9th Cir. 2008) (quoting Schlup, 513 U.S. at 327). Several cases have followed the principles and guidelines laid out in Schlup regarding the fundamental miscarriage of justice exception. See House v. Bell, 547 U.S. 518, 537 (2006); see also Cook v. Schriro, 516 F.3d 802, 829 (9th Cir. 2008) (limiting the miscarriage of justice exception to cases where the petitioner alleges actual innocence); Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) (a showing that some constitutional violation probably resulted in the conviction of "one innocent of the crime" is required to establish a miscarriage of justice exception).

09-0708 L (WMc)

1   Here, as mentioned previously, Petitioner has failed to allege - despite several

2   opportunities to do so - either (1) a fundamental miscarriage of justice would result if this Court

3   does not reach the merits of his instant double jeopardy claim, or (2) he is actually innocent of the

4   underlying offenses. The fundamental miscarriage of justice exception to Petitioner's procedurally

5   defaulted claim, therefore, is inapplicable.

6   As a result, the Court is procedurally barred from reaching the merits of Petitioner's instant

7   double jeopardy claim regarding the alleged inappropriate application of the Three Strikes law.

8   **2. Using Three Prior Strikes Culled from a Single Act to Enhance the Sentence on the**

9   **Current Offenses Violates Double Jeopardy**

10   Petitioner argues he was "subject to multiple jeopardy" in violation of the Double Jeopardy

11   Clause by the "assessment of three strikes for the commission of one offense, and the subsequent

12   application of all three strikes to enhance the sentence on the current offense". (Petition at 19.)

13   Respondent contends this claim is also procedurally defaulted for the same reasons given in part

14   D.1.a of this Report and Recommendation. Nevertheless, Respondent also maintains Petitioner's

15   instant claim is meritless. The Court will address each of these issues in turn.

16   *a. Procedural Default*

17   The analytical framework of the procedural default rule, as discussed in Section V.D.1.a,

18   *supra*, governs the evaluation of this additional procedural default claim. The same section of this

19   Report and Recommendation establishes an independent and adequate state procedural bar exists,

20   and Petitioner has neither demonstrated cause and prejudice, nor the existence of a fundamental

21   miscarriage of justice to excuse the procedural default. As mentioned previously with respect to

22   Petitioner's alleged double jeopardy violation on the grounds of an inappropriate application of the

23   Three Strikes law, Petitioner had the opportunity to bring the instant double jeopardy claim on

24   direct review, but he failed to do so. In addition, Petitioner had two subsequent opportunities -

25   state collateral review and a Traverse in this Court - to explain and justify his failure to present the

26   instant claim on direct review, but he failed to provide any explanation or justification on

27   collateral review. Further, Petitioner did not file a Traverse.

28   Therefore, Petitioner's claim is procedurally defaulted. A brief discussion of the merits of

1    Petitioner's instant claim, however, will be provided in the alternative.

2                     *b. Double Jeopardy Violation on the Merits*

3            The Double Jeopardy Clause provides: "Nor shall any person be subject for the same

4    offence [sic] to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The U.S.

5    Supreme Court has explained the Double Jeopardy Clause "serves the function of preventing both

6    successive punishment and successive prosecution," United States v. Dixon, 509 U.S. 688, 704

7    (1993), and "protects against...the actual imposition of two punishments for the same offense."

8    Witte v. United States, 515 U.S. 389, 396 (1995); accord Monge v. California, 524 U.S. 721, 727-

9    28 (1998).

10           With respect to the use of prior convictions to enhance sentences for later convictions

11   under a recidivist sentencing regime like the California Three Strikes law, the U.S. Supreme Court

12   has explained:

13           In repeatedly upholding such recidivism statutes, we have rejected double jeopardy
             challenges because the enhanced punishment imposed for the later offense "is not
14           to be viewed as either a new jeopardy or additional penalty for the earlier crimes,"
             but instead as "a stiffened penalty for the latest crime, which is considered to be an
15           aggravated offense because a repetitive one."

16   Witte, 511 U.S. at 400 (quoting Gryger v. Burke, 334 U.S. 728, 732 (1948)).

17           The Ninth Circuit has followed the U.S. Supreme Court. In Simpson v. Thomas, 528 F.3d

18   685 (9th Cir. 2008), the court explained:

19           In United States v. Kaluna, we addressed a challenge to the Federal Three Strikes
             Provision...[Citation omitted.] There, we declined to hold that such a provision
20           violated the Double Jeopardy Clause, observing that "the enhanced punishment
             imposed for the later offense is not to be viewed as either a new jeopardy or
21           additional penalty for the earlier crimes, but instead as a stiffened penalty for the
             latest crime." [Internal quotation marks and citation omitted.] We believe that this
22           same reasoning applies to California's Three Strikes Provision...[Citations omitted.]

23   Simpson, 528 F.3d at 689-690.

24           Here, in light of the above authority, the state court's use of Petitioner's previous strikes to

25   elevate Petitioner's current DUI offense to a felony and enhance to a felony his Failure to Appear

26   while on bail does not violate the Double Jeopardy Clause. Therefore, it is recommended federal

27   habeas relief be **DENIED** on this claim.

28   **E. Ineffective Assistance of Appellate Counsel**

1    Petitioner claims he received ineffective assistance of appellate counsel in violation of the

2    Sixth Amendment because: (a) counsel failed to raise on direct appeal the ineffective assistance of

3    trial counsel claim; (b) counsel "failed to raise the issue of improper application of the three strikes

4    law in relation to the legislative intent when enacting the law"; and (c) counsel's failure to raise on

5    direct appeal the alleged Double Jeopardy violation.

6    As a general matter, the analytical framework of the two-pronged Strickland test, laid out

7    in Section V.B, *supra*, governs the evaluation of claims of ineffective assistance of appellate

8    counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000) (noting in addition to demonstrating

9    counsel's performance was "objectively unreasonable," Petitioner must show a "reasonable

10   probability" that, but for his counsel's objectively unreasonable performance, he would have

11   "prevailed on his appeal"); see Evitts v. Lucey, 469 U.S. 387, 396 (1985); Delgadillo v. Woodford,

12   527 F.3d 919, 930 (9th Cir. 2008) (rejecting an ineffective assistance of appellate counsel claim

13   under Strickland due to a failure to show prejudice). Under Strickland, in order to show counsel's

14   performance was objectively unreasonable Petitioner must show counsel "fail[ed] to find arguable

15   issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to

16   file a merits brief raising them." Robbins, 528 U.S. at 285. The U.S. Supreme Court has suggested

17   an "arguable issue" is a "nonfrivolous" issue "warranting a merits brief" that counsel "could argue

18   in good faith with some potential for prevailing." Id. (internal quotation marks omitted).

19   Appellate counsel is not required to raise every nonfrivolous claim, whether or not the

20   claim is urged by the Petitioner. Jones v. Barnes, 463 U.S. 745, 751 (1983). Petitioner's Sixth

21   Amendment right to counsel is not violated "if [appellate] counsel, as a matter of professional

22   judgment, decides not to present those [nonfrivolous] points." Id; Robbins, 528 U.S. at 288

23   ("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous

24   claim, but rather may select from among them in order to maximize the likelihood of success on

25   appeal"). Given appellate counsel's wide discretion in exercising professional judgment, the

26   presumption of effective assistance of counsel is overcome "only when ignored issues are *clearly*

27   *stronger* than those presented..." Robbins, 528 U.S. at 288 (quoting Gray v. Greer, 800 F.2d 644,

28   646 (7th Cir. 1985)) (emphasis added).

While appellate counsel did not raise on direct appeal the issues of ineffective assistance of trial counsel and the alleged Double Jeopardy violations, counsel's failure to do so is well within counsel's professional discretion under Strickland for two reasons. First, Petitioner's claim of ineffective assistance of trial counsel and double jeopardy are frivolous, thus placing appellate counsel's decision not to raise the issue well within her discretionary professional judgment. Second, appellate counsel's alleged failure to argue the additional grounds for habeas relief was not unaligned with Petitioner's focus of his entire appeal – a challenge to his Three Strikes sentence. Thus, Petitioner fails under the first prong of Strickland – the objectively unreasonable test – and on this ground alone, his claim must fail.

Further, even assuming *arguendo* Petitioner satisfied the first prong of Strickland, Petitioner would still fail Strickland's second prong. The California Court of Appeal rejected Petitioner's allegations on direct review by repeatedly referencing Petitioner's lengthy criminal history; rate of recidivism, particularly concerning driving under the influence; repeated failure to comply with the terms of his probation; and prior strike convictions, in particular causing three deaths while driving under the influence. Given the nature of the Court of Appeal's analysis, Petitioner has failed to show a reasonable probability that, but for appellate counsel's failure to raise the additional grounds for habeas relief, Petitioner would have prevailed. Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   / / /

2   / / /

3   / / /

4   / / /

## VI.

### CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered denying the Petition and dismissing this action.

**IT IS ORDERED** that no later than **October 16, 2010** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 29, 2010**. The parties are advised failure to file objections within the specified time may result in a waiver of the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); see also Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  September 16, 2010

**Hon. William McCurine, Jr.**
**U.S. Magistrate Judge**
**United States District Court**

09-0708 L (WMc)